PEOPLE *v.* GORKA.

OPINION OF THE COURT.

1. APPEAL AND ERROR—DELAY—NEW TRIAL—FULL REVIEW.

Delay of one year in providing criminal defendant with a trial transcript, dilatoriness of appellate counsel, and unnecessary waste of time in perfecting a plenary appeal caused partially by defendant's numerous motions made in person while he was represented by counsel, *held,* not to require giving defendant a new trial where he had a full review of his case in the Supreme Court and received the same appellate review he would have received in the Court of Appeals on an appeal of right.

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur, New Trial § 17 *et seq.*
[2] 4 Am Jur 2d, Appeal and Error § 292 *et seq.*
[3] 21 Am Jur 2d, Criminal Law § 315.
[4] 21 Am Jur 2d, Criminal Law § 339.
[5] 29 Am Jur 2d, Evidence § 56 *et seq.*
[6] 39 Am Jur, New Trial § 162 *et seq.*

2. Same—Application for Delayed Appeal—Appeal as of Right.
Consideration by an appellate court of a petition to file a delayed appeal is not equivalent to an appeal as of right guaranteed one accused of crime, since a petition for delayed appeal requires an affirmative showing that delay was not due to defendant's culpable negligence and that there is merit in the claim of appeal, whereas an appeal of right requires no such affirmative showing (Const 1963, art 1, § 20; GCR 1963, 806.4).

3. Criminal Law—Counsel—Representation of Accused.
Appellate counsel's delay in filing necessary claim of appeal of right within 60 days of entry of order appointing him, without good cause or reason for delay, did not necessarily show that he did not ably and competently represent the accused.

4. Same—Evidence—Destruction of Notes.
Destruction of handwritten notes of police officers, who had conducted a surveillance of defendant, after they made individual typewritten reports detailing defendants' activities *held*, not to be a violation of defendant's right of confrontation and cross-examination where there is no showing or claim of wilful suppression of evidence (CLS 1961, § 750.529).

5. Same—Judicial Notice—Codefendant's Appeal.
Judicial notice is taken of facts and issues presented in a separate appeal by codefendant from conviction of armed robbery and case is remanded to trial court to permit defendant to join in codefendant's motion for new trial and defendant is permitted to subpoena and bring in all relevant witnesses for a full and fair evidentiary hearing to determine whether a new trial should be granted (CLS 1961, § 750.529).

Dissenting Opinion.
T. E. Brennan, C. J., and Black, J.

6. Criminal Law—New Trial—New Evidence—Affidavit—Sufficiency.
*Hearsay affidavit of another that he previously admitted to police officers the commission of crime for which defendant was tried is not a substantial allegation of newly discovered evidence warranting an evidentiary hearing on motion for new trial.*

Appeal from Court of Appeals, Division 1, Burns, P. J., and Fitzgerald and Holbrook, JJ., denying application for delayed appeal from Recorder's Court

of Detroit.  Submitted June 11, 1968.  (Calendar No. 5, Docket No. 51,735.)  Decided February 3, 1969.

Jerome P. Gorka was convicted of robbery armed. Delayed motion for new trial denied.  Defendant appealed.  Denial affirmed by Court of Appeals. Defendant appeals.  Remanded for evidentiary hearing on motion for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Walter A. Kurz,* for defendant on appeal.

T. M. KAVANAGH, J.  January 20, 1964, defendant Gorka and Henry Mosden were jointly tried and found guilty of armed robbery[1] by a jury in recorder's court.  Each was sentenced to a term of 10 to 20 years.

March 2, 1964, the attorney who had been trial counsel for Mosden became counsel for both Mosden and defendant Gorka in the postconviction proceedings and filed a motion for a new trial.

April 6, 1964, defendant Gorka and Mosden, acting *in propria persona,* filed a motion to obtain transcripts and trial records.

June 3, 1964, defendant, acting *in propria persona,* filed a motion for bond pending appeal.

August 4, 1964, the trial court denied the *in propria persona* motions for assistance and free transcripts pending appeal.  The same day the trial court de-

---

[1] CLS 1961, § 750.529 (Stat Ann 1968 Cum Supp § 28.797).—RE- PORTER.

nied defendant Gorka's *in propria persona* motion for bail pending appeal.

August 28, 1964, the trial court denied defendant's motion for new trial filed March 2, 1964.

September 30, 1964, this Court, having before it on appeal defendant's motion for appointment of counsel and for transcript, remanded the matter to recorder's court to enter an order providing both Gorka and Mosden with counsel and with such portion of the trial transcript as counsel may require for proper postconviction proceedings.

October 28, 1964, the trial court appointed Paul R. Jackman as legal counsel for both Gorka and Mosden. An appearance, dated October 8, 1964, was filed by attorney Jackman on October 28, 1964.

February 9, 1965, defendant Mosden, acting *in propria persona,* filed a motion to compel compliance of the court reporter with the court order directing furnishing of transcript.

March 10, 1965, the trial judge, upon motion of the court reporter, ordered that the time within which the transcript was to be furnished be extended to and include June 5, 1965.

June 5, 1965, the court reporter petitioned the trial court for a further extension of time within which to furnish the transcript. The trial court ordered an extension to include August 2, 1965.

No further extensions were given, but it was not until October 22, 1965, that the court reporter filed with the clerk a notice of filing of the transcript of the record on appeal. The record discloses an affidavit of mailing of this notice to Attorney Jackman, but no notice was sent to the defendants, who had been acting *in propria persona.*

December 14, 1965, Attorney Jackman filed a consent and notice of substitution of attorney. On this same document, Attorney Walter A. Kurz en-

tered his appearance as attorney for defendant Gorka. Notice of substitution of attorney was sent to appellate counsel for the people.

January 17, 1966, Attorney Kurz filed an appearance as attorney for defendant Gorka for post-conviction procedures and appeal.

October 26, 1966, Attorney Kurz filed an application for leave to file delayed appeal in the Court of Appeals. Accompanying the application was one for setting of bail pending disposition of appeal.

January 14, 1967, the Court of Appeals denied the application for delayed appeal for the reason that merit is not shown on the grounds presented. Application for rehearing was denied by the Court of Appeals on February 24, 1967.

Defendant Gorka is here on leave granted by this Court on June 8, 1967, 379 Mich 768.

On appeal in this Court, defendant Gorka contends he was unfairly and unconstitutionally denied and deprived of his timely, adequate, and effective right of appeal, appellate processes, assistance of trial and appellate counsel, and furnishing of trial transcript. He further contends that the trial court, court stenographer, court-appointed trial and appellate counsel, and the Michigan Court of Appeals violated and denied defendant his constitutional rights in that the trial court and court-appointed counsel wrongfully failed to inform him of his absolute right to appeal his conviction and, as an indigent, to have trial counsel and transcript furnished at State expense.

Defendant Gorka also contends that his court-appointed counsel wrongfully failed or refused to file the necessary claim of appeal within 60 days of entry of order appointing him and thereafter failed or refused, for approximately one year, to file and process any appeal, without good cause or reason

shown, even though defendant demanded he file plenary appeal.

Defendant further contends that the trial court stenographer obtained and took improper and unauthorized extensions of time to file the trial transcript and did not file said trial transcript until approximately one year after entry of order therefor; also, that the Michigan Court of Appeals wrongfully failed and refused to grant or restore to defendant his absolute right to appeal his conviction, lost through no fault of his own.

We deplore the delays in providing defendant Gorka with a trial transcript, the dilatoriness of certain appellate counsel, and the unnecessary waste of time and energy in perfecting a plenary appeal. However, to a certain extent defendant Gorka hindered his own progress by the numerous *in propria persona* motions which conflicted with the course of appellate procedures dictated by his counsel.

Nevertheless, the defendant has had a full review of his case in this Court. The circuitous appellate route in this case, caused in part by the dilatoriness and violations of court rule by the court reporter and counsel, has not diminished the right of appeal. He has received from this Court the same appellate review he would have received from the Court of Appeals under an appeal of right. The fact that defendant, on his appellate route, encountered numerous procedural detours, some of his own making, does not compel this Court to grant him a new trial.[2]

---

[2] This, of course, does not deny the defendant's contention that the Court of Appeals erred in not granting the application for leave to file a delayed appeal. Under the factual circumstances of this case a serious constitutional problem would have been raised if this Court had not granted leave to appeal. Consideration of a petition to file a delayed appeal is not equivalent to an appeal as of right guaranteed by Const 1963, art 1, § 20. The former requires an affirmative showing that delay was not due to defendant's culpable negligence and that there is merit in the claim of appeal. The latter requires no such affirmative showing. GCR 1963, 806.4.

The cases cited by the defendant are not applicable to the instant case. *Ellis* v. *United States* (1958), 356 US 674 (78 S Ct 974, 2 L Ed 2d 1060); and *Anders* v. *California* (1967) 386 US 738 (87 S Ct 1396, 18 L Ed 2d 493), require that an appointed counsel act truly as an advocate for the defendant and not merely as *amicus curiae* to the court. On appeal to this Court defendant was actively and commendably represented by appellate counsel. *Entsminger* v. *Iowa* (1967), 386 US 748 (87 S Ct 1402, 18 L Ed 2d 501); *Eskridge* v. *Washington State Board of Prison Terms and Paroles* (1958), 357 US 214 (78 S Ct 1061, 2 L Ed 2d 1269); *Lane* v. *Brown* (1963), 372 US 477 (83 S Ct 768, 9 L Ed 2d 892); and *Hardy* v. *United States* (1964), 375 US 277 (84 S Ct 424, 11 L Ed 2d 331), require that a trial transcript be provided an indigent defendant. Here, this Court did comply with the Federal authorities and a free transcript was furnished to the defendant after a regrettably long delay. *Hamilton* v. *Alabama* (1961), 368 US 52 (82 S Ct 157, 7 L Ed 2d 114); *Wilson* v. *Rose* (CA 9, 1966, 366 F2d 611; *Whitaker* v. *Warden, Maryland Penitentiary* (CA 4, 1966), 362 F2d 838; and *Jones* v. *Cunningham* (CA 4, 1963), 313 F2d 347, express the rule that under the Sixth Amendment to the Federal Constitution "assistance of counsel" means an "adequate and effective" counsel. It appears from the record as a whole that trial counsel[3] and appellate counsel, although hampered by defend-

---

[3] We seriously question whether a 15-minute consultation with the defendant is an adequate preparation for a trial of a capital case. See *Jones* v. *Cunningham* (CA 4, 1963), 313 F2d 347. We cannot, however, condemn trial counsel as being inadequate, absent a clear showing of dereliction which prejudiced the defendant. The record on appeal discloses that trial counsel raised and argued all issues known to him at trial. Although trial counsel did fail to note certain alibi witnesses produced by defendant, this defect was cured at trial by the people in putting the alibi witnesses on the stand.

ant's independent legal maneuvers, ably and competently represented the accused.

A review of the entire record does not disclose any procedural infirmity which would warrant reversal of the defendant's conviction.

The only substantive issue raised is whether the destruction of the notes of the police officers conducting the surveillance violated the defendant's right of confrontation and cross-examination.

The record discloses that five detectives from the criminal intelligence bureau of the Detroit police department had kept defendant Gorka and codefendant Mosden under surveillance for a period of two hours. During this period of surveillance each of the detectives made handwritten notes of the details of his observation. After the defendants were arrested, the five detectives gathered in one room and, each using his own handwritten notes, made an individual typewritten report detailing the defendants' activities. Each detective thereafter destroyed his handwritten notes. These reports were not offered as evidence by the prosecution, but were used—over objection—by the police detectives at the trial to refresh their memories as to specific details.

The defendant here argues that the systematic destruction of the original notes deprived him of an effective means of cross-examination and of impeaching each witness' testimony.

Research discloses that there is one case which apparently supports the defendant's position. In *People* v. *Betts* (1947), 272 App Div 737, 741 (74 NYS2d 791, 794), the police had "bugged" the defendant's telephone and made shorthand notes of incriminating conversations. After incorporating these shorthand notes in a report, the police, by their own admission, destroyed the notes to prevent defendant from using them for cross-examination

purposes. At trial the witnesses used the reports
to refresh their memories. The New York court,
on appeal, held at page 741:

"While the general rule is that any paper whatso-
ever may be used to refresh the recollection of a
witness, provided it actually serves that purpose
[citations omitted], where, as here, an officer of the
law attempts to refresh his recollection from a writ-
ing which purports to be a transcript of original
and secondary notes wilfully destroyed by him to
frustrate cross-examination, the witness should not
be permitted to use such a document to aid him."

The distinguishing factor in *Betts, supra,* how-
ever, is the misdirected zeal of the police officers in
wilfully and knowingly suppressing evidence favor-
able to the defendant. The record in the case before
us would not support, and neither does defendant-
appellant claim, any wilful suppression of evidence.

There appears to be considerable Federal author-
ity dealing with destruction of fragmentary notes
which is contrary to the theory advanced by the de-
fendant. These cases, however, uniformly concern
the administration of the Jencks act.[4]

A review of Michigan authorities discloses only
two pertinent criminal cases.

In *People* v. *Hobson* (1963), 369 Mich 189, this
Court affirmed the trial court's admission into evi-
dence of a typewritten report composed from sur-
veillance notes which were subsequently destroyed.
The main issue decided dealt with the admissibility
of the report under the rule of past recollection re-
corded. The ancillary issue of whether destruction
of the surveillance notes deprived defendant of the
"best evidence" was disposed of by the Court, upon
the authority of *People* v. *Johnson* (1921), 215 Mich
221, stating (pp 193, 194):

---

[4] 18 USC, § 3500.

"We think the testimony of the officers that the memoranda constituted a correct record, although not exact copies, of their notes together with matter drawn from their memories, qualified them for admission and consideration by the judge as to credibility and accuracy. They were prepared by officers who had personal, firsthand knowledge of the matters recorded in the memoranda and the fact that, in the preparation, the officers referred to their notes to supplement their memories, did not render the memoranda secondary evidence and make them inadmissible."

In *People* v. *Johnson, supra,* this Court held that it was not error to permit the prosecuting attorney's stenographer to refresh her memory from the transcript of the defendant's statement rather than requiring only the use of her original notes. The Court stated (p 225):

"The stenographer or any one else who heard the defendant's statement would be competent to testify to what he said; and the stenographer may use her minutes for the purpose of refreshing her recollection as to what the defendant stated."

In *People* v. *Hobson, supra,* I joined Justice Souris in his dissent criticizing the present police practice of destroying important surveillance notes and holding that such a practice unnecessarily threatens the constitutional safeguards of a fair trial by denying effective cross-examination of witnesses. However, I must accede to the majority of the Court, which held that it was not error to permit the prosecution to have admitted into evidence the typewritten report and that the defendant's constitutional right of confrontation and cross-examination was not impaired by the destruction of the police surveillance notes. For the present at least, this is the law in Michigan.

We hold that the destruction of the original notes by the five detectives did not deprive defendant of an effective means of cross-examination and of impeaching each witness' testimony.

While we find no merit in defendant's arguments, one final matter must be considered by the Court for a proper disposition of this case.

In the companion case of *People* v. *Mosden* (1968), 381 Mich 506, which was separately appealed to this Court, it is alleged that the trial court erred in denying Mosden's application for a new trial based upon newly discovered evidence. This claim is predicated on an affidavit of a Charles Page Blackwell confessing to the commission of the armed robbery for which defendants Mosden and Gorka were convicted.

Upon Mosden's motion, a hearing was held on March 2, 1966, but Mosden was denied the opportunity by the trial court to subpoena witnesses, including Blackwell. The trial judge's opinion denied Mosden's motion because "the matter concerning Charles Page Blackwell was thoroughly investigated *by the police* and determined to be false." (Emphasis added.)

This Court in its PER CURIAM opinion in *People* v. *Mosden, supra,* held that this procedure was not a full and fair evidentiary hearing which squares with due process or the holding in *Townsend* v. *Sain* (1963), 372 US 293 (83 S Ct 745, 9 L Ed 2d 770), and remanded the case to recorder's court for a proper evidentiary hearing.

This question, regarding Blackwell's affidavit confessing to a crime of which *both* defendants were jointly accused and convicted, was never raised by defendant Gorka either by motion for new trial or on appeal. However, this Court can take judicial notice of the facts and issues presented in *People* v. *Mosden, supra.*

To avert any miscarriage of justice, which would necessarily result to defendant Gorka if Blackwell's confession proves to be true, we remand this case to recorder's court for the purpose of permitting defendant Gorka to join in defendant Mosden's motion for new trial. Defendant Gorka shall be permitted to subpoena and bring in all relevant witnesses, including Blackwell, for a full and fair evidentiary hearing to determine whether a new trial should be granted.

DETHMERS, KELLY, and ADAMS, JJ., concurred with T. M. KAVANAGH, J.

T. E. BRENNAN, C. J. (*dissenting*).

I dissent for the reasons expressed in *People* v. *Mosden,* 381 Mich 506, 513.

BLACK, J., concurred with T. E. BRENNAN, C. J.

T. G. KAVANAGH, J., took no part in the decision of this case.