PEOPLE v REDFERN

1. CRIMINAL LAW—APPEAL AND ERROR—EVIDENCE—FAILURE TO OB-
JECT—MISCARRIAGE OF JUSTICE—SCOPE OF REVIEW.

The absence of an objection to testimony elicited by the prosecu-
tor connecting a defendant with a crime with which he was not
charged narrows the focus of appellate review; therefore, where
the Court of Appeals can discern no miscarriage of justice in
the admission into evidence of such testimony there is no
reversible error.

2. CRIMINAL LAW—APPEAL AND ERROR—CLOSING ARGUMENTS—PROSE-
CUTORS—COMMENTS—RESPONSE TO DEFENSE COUNSEL.

Statements made by a prosecutor during closing arguments in
which he indicated that he would not try to convict a defendant
unless there was a case against the defendant were ill-advised
but are not grounds for reversal where the statements were in
response to accusations by defense counsel and where the
prosecutor did not state a personal belief in the defendant's
guilt.

3. CRIMINAL LAW—APPEAL AND ERROR—CONSTITUTIONAL LAW—FAIL-
URE TO OBJECT—TRIAL STRATEGY.

Infringements of constitutional rights are reviewable on appeal
despite the lack of objection by defense counsel at trial; how-
ever, appellate counsel cannot expect the Court of Appeals to
extricate a defendant from the perils occasioned by trial coun-
sel's deliberate trial strategies.

4. COURTS—TRIAL—WITNESSES—JUDICIAL QUESTIONING—CRIMINAL
LAW—DETRIMENTAL TO DEFENDANT'S CASE.

Trial judges have broad discretion concerning examination of
witnesses; however, it was reversible error for a trial judge to
question a defendant in a manner which quite possibly could

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error §§ 880–887.
[2] 5 Am Jur 2d, Appeal and Error § 541.
[3, 5] 5 Am Jur 2d, Appeal and Error § 558.
[4] 81 Am Jur 2d, Witnesses §§ 417, 419–421.

have influenced the jury to the detriment of the defendant's case.

5. CRIMINAL LAW—APPEAL AND ERROR—FAILURE TO OBJECT—JUDICIAL QUESTIONING.

Failure of defense counsel to object to improper questioning of a defendant by a trial judge does not preclude appellate review of the issue since an attorney may be reluctant to criticize the judge's behavior on the bench and thereby possibly incur the judge's displeasure.

Appeal from Recorder's Court of Detroit, Joseph E. Maher, J. Submitted June 18, 1976, at Detroit. (Docket No. 23782.) Decided September 28, 1976.

Robert D. Redfern was convicted of receiving and concealing stolen property over $100. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training and Appeals, and *Donald S. Walker,* Assistant Prosecuting Attorney, for the people.

*McCallum & Ziolkowski,* for defendant.

Before: R. M. MAHER, P. J., and D. C. RILEY and R. M. RYAN,* JJ.

PER CURIAM. Defendant appeals from a Detroit Recorder's Court jury verdict of guilty to the charge of receiving and concealing stolen property over $100, MCLA 750.535; MSA 28.803. We address and answer his appellate arguments *seriatim.*

Defendant first argues that the trial court erred

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

reversibly in permitting the prosecutor to elicit, from a witness residing in the same neighborhood as the complaining witness, testimony connecting defendant with a crime for which he was not charged. The absence of an objection to this testimony, however, narrows the focus of appellate review. After thoroughly reviewing the trial transcript, we discern no miscarriage of justice in admitting the neighbor's testimony. *People v Murry,* 59 Mich App 555, 557; 229 NW2d 845 (1975). There is, therefore, no reversible error on this issue.

Next, defendant alludes to the following remarks by the prosecutor during closing argument as prejudicing defendant's right to a fair trial:

"Now, he says that my duty—this is the adversary system—and it is my duty to convict. I resent that. I resent that most fervently. The State of Michigan doesn't pay or give me enough of anything to try to convict a person who by the law and the facts don't indicate that he is guilty *[sic]*. My duty is to insure that fair, substantial justice be done, that's the way I see it.

"If his duty is to get his man off, my duty is to insure that justice be done. I resent that remark and I just want to point that out. I would not try to convict anyone without a case."

While we would not encourage such comments, we do not believe they warrant reversal in light of defense counsel's statements just minutes before that the police "too are striving for a conviction" and that in their zeal they occasionally alter the facts to enhance the likelihood of a guilty verdict. The prosecutor made no statement of personal belief in guilt, but rather issued a rejoinder defending the prosecutor's office. Clearly, the present remarks do not approach the level of prejudice condemned in *People v Humphreys,* 24 Mich App

411; 180 NW2d 328 (1970), nor do they resemble the arguably prejudicial remarks countenanced by this Court in *People v Pomranky,* 62 Mich App 304; 233 NW2d 263 (1975). Accordingly, these comments, though certainly ill-advised, are inadequate grounds for reversal.

Defendant also contends that inadmissible statements violative of *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), were brought out at trial. In view of our disposition of the final issue presented, we leave open the question whether appellate counsel can raise the *Miranda* issue where defendant's trial counsel registered no objection to the statements, but instead brought out the same information on cross-examination and utilized defendant's statements to the police as a cornerstone in his defense. Even though alleged infringements of constitutional rights are reviewable on appeal despite the lack of objection at trial, *e.g., People v Thomas,* 44 Mich App 649; 205 NW2d 604 (1973), *People v Cotton,* 38 Mich App 763; 197 NW2d 90 (1972), appellate counsel cannot expect this Court to serve as a *deus ex machina* extricating defendant from the perils occasioned by trial counsel's deliberate trial strategies. *People v Brocato,* 17 Mich App 277, 305; 169 NW2d 483 (1969), *People v Willie Johnson,* 58 Mich App 165; 227 NW2d 272 (1975).

We mention this to emphasize the need for a timely objection that would establish an adequate record. On the sketchy record before us we can only speculate whether defendant was or was not given *Miranda* warnings and whether the warnings were required under the circumstances. Surely, a comparison of the detailed factual patterns in *People v Ridley,* 396 Mich 603; 242 NW2d 402 (1976), and *People v Reed,* 393 Mich 342; 224

NW2d 867 (1975), *cert den,* 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975), brings home this point forcefully.

Defendant's final claim of error is the most troubling. At trial, after the prosecution had finished cross-examining defendant, the following exchange took place between the trial judge and defendant:

"*The Court:* I have a couple of questions. What kind of horses were running at the racetrack at that time of year?

"*Mr. Redfern [defendant]:* I don't remember.

"*The Court:* You don't. Do you remember if the track was open at that time?

"*Mr. Redfern:* The track is always open, the D. R. C. closes at a certain time of the year, like I'm sure it's not open right now, but then Hazel Park opens up.

"*The Court:* Was it afternoon or night racing?

"*Mr. Redfern:* This was in the day.

"*The Court:* If I told you that the only racing on September 12th and 13th was night racing, would you agree with me?

"*Mr. Redfern:* No, I couldn't agree with that.

"*The Court:* Counsel, do you want to pursue that?

"*Mr. House [Assistant Prosecuting Attorney]:* I don't think it's critical to our case, your Honor."

Defendant asserts that since the source of the money found on defendant at the time of his arrest was a matter of considerable dispute, the trial court breached the bounds of judicial impartiality by so questioning defendant. In short, defendant argues that the judge's questions were, at bottom, thinly veiled expressions of disbelief in defendant's testimony which may have unfairly influenced the jury's verdict. Reluctantly, we must agree.

We are not unmindful of the broad discretion conferred on trial judges concerning examination of witnesses. *People v Cole,* 349 Mich 175; 84

NW2d 711 (1957), *People v Gray,* 57 Mich App 289, 294; 225 NW2d 733 (1975). In addition, we realize that the number of questions posed does not determine whether the trial judge has overstepped permissible limits. *People v Wilder,* 383 Mich 122; 174 NW2d 562 (1970). However, as indicated in *People v Smith,* 64 Mich App 263, 267; 235 NW2d 754 (1975), the appropriate test is whether

"a judge's questions and comments *'may* well have unjustifiably aroused suspicion in the mind of the jury' as to a witness' credibility, * * * *Simpson v Burton,* * * * [328 Mich 557, 563–564; 44 NW2d 178 (1950)], and * * * [whether] partiality *'quite possibly could* have influenced the jury to the detriment of defendant's case', * * * *People v Roby,* 38 Mich App 387, 392; 196 NW2d 346 (1972). See also *People v Young,* * * * [364 Mich 554, 559; 111 NW2d 870 (1961)]." (Emphasis in *Smith, supra.)*

In the case at bar, the judge's questions may well have implanted in the minds of the jurors doubts as to defendant's veracity. While the intonation in the judge's voice might well allay our concern were we able to hear the quoted colloquy as it took place, we nonetheless hold that a reversal and remand for new trial is the proper course. The judge's questioning does not appear to have been an attempt to clarify ambiguous testimony but rather a clear usurpation of the prosecutorial role. As such, we believe the questions might have jeopardized defendant's right to a fair trial.

That defense counsel raised no objection to the questions posed by the court does not alter the result. *Smith, supra,* at 269–270, *People v Eglar,* 19 Mich App 563; 173 NW2d 5 (1969). Understandably, counsel may be reluctant to criticize the judge's own behavior on the bench "thereby possible incurring the judge's displeasure". *Id* at 565.

Reversed and remanded for new trial.